**William Mark PIOTROWSKI,
petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY,
Respondent.**

No. C6–88–1039.

Court of Appeals of Minnesota.

Dec. 13, 1988.
Review Granted Feb. 10, 1989.

William Kirschner, William Kirschner & Associates, Fargo, N.D., for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and RANDALL and BOWEN *, JJ., without oral argument.

## OPINION

RANDALL, Judge.

Appellant was arrested for driving while under the influence, failed a breath test, and had his Minnesota driving privileges revoked. He petitioned for judicial review, challenging the validity of the stop because it was made in North Dakota, outside the officer's jurisdiction. Appellant argued that all evidence collected was the result of an illegal stop, and thus should have been suppressed. The trial court sustained the revocation, and Piotrowski appeals. We reverse.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

On January 1, 1988, at approximately 2:35 a.m., Moorhead Police Officer Russell Wicklund (Wicklund) observed appellant's vehicle drive through a flashing red light [1] at Twenty–Fourth Avenue and Eighth Street South in Moorhead, Minnesota. Wicklund observed no other traffic violation, nor had any articulable suspicion thereof. He was not in fresh pursuit of anyone other than a traffic statute offender. Wicklund followed appellant onto westbound Interstate 94 leading towards North Dakota. Wicklund activated his red lights approximately four seconds before appellant crossed the Minnesota/North Dakota border. Appellant proceeded into North Dakota and stopped his vehicle approximately 100 yards west of the Interstate 94 bridge. At this point where the stop, detention, investigation, and arrest took place, appellant was in Fargo, North Dakota.

Wicklund, in full uniform and carrying his side-arm, pulled his vehicle behind appellant's, exited his vehicle, and approached appellant's vehicle. As appellant was opening his door to leave his vehicle, Wicklund instructed him to stay in the car because of traffic hazards. Wicklund asked appellant to produce his driver's license and appellant did so. Wicklund asked appellant to leave his vehicle and perform several field sobriety tests. Wicklund also administered a preliminary breath test, which appellant failed. Wicklund then arrested appellant for a violation of Minn.Stat. § 169.121 (1986), and read him the Minnesota Implied Consent Advisory. All the evidence was collected in North Dakota by Wicklund operating under "full color" authority of a Minnesota police officer.

Wicklund then informed appellant that he had the choice of going back to Minnesota and being charged with a DWI offense there, or remaining in North Dakota and potentially being charged with DWI in both North Dakota and Minnesota. Assuming that he had to choose between a DWI charge in one state and DWI charges in two states, appellant decided to return to Minnesota. A short time after the stop, a Fargo police officer appeared on the scene, spoke to Wicklund and left. Appellant did not speak to the Fargo police officer. The Fargo police officer took no part in Wicklund's investigation, apprehension, and arrest of appellant; and the Fargo officer's appearance is not in issue. Wicklund then brought appellant to the Clay County Law Enforcement Center in Moorhead, Minnesota, for booking.

Appellant's driver's license was subsequently revoked and he petitioned for judicial review. The trial court found upon stipulated facts that the stop was lawful, that the evidence of driving while intoxicated was collected legally, and therefore the arrest and revocation were proper. The court sustained the revocation of appellant's driving privileges, and Piotrowski brings this appeal. We reverse.

## ISSUE

Was the pursuit into North Dakota and subsequent stop of appellant's vehicle lawful, when made by a Minnesota peace officer who observed activity in the State of Minnesota constituting a violation of a traffic statute less than a felony?

## ANALYSIS

■ Officer Wicklund stopped appellant for driving through a flashing red traffic signal in violation of Minn.Stat. § 169.06, subd. 7(1) (1986). The controversy in this case stems from the officer's pursuit of appellant into North Dakota to make a stop

---

1. Pursuant to Minn.Stat. § 169.89, subd. 1 (1986), appellant's activities constituted a petty misdemeanor, a lesser offense than a misdemeanor, and an offense technically not even a criminal offense. Under Minnesota law, the arresting officer can elevate a petty misdemeanor to a level of a misdemeanor by alleging that the driver's activities were conducted in such a way as to be endanger persons or property. In this case, elevation, or the lack of it, is not an issue. The record does not reflect that a formal citation for going through a flashing red light without stopping was ever issued to appellant. The distinction between a petty misdemeanor traffic violation and a misdemeanor traffic violation, even if applicable here, would not affect our analysis.

in North Dakota based solely on acts occurring in the State of Minnesota. It is stipulated that the arrest occurred outside the officer's jurisdiction. The question becomes whether "fresh pursuit" or "citizen's arrest" legitimize the foreign-state stop of appellant by Wicklund.

In *State v. Goff,* 118 N.H. 724, 393 A.2d 562 (1978), a New Hampshire court addressed the same issue presented here. A New Hampshire police officer saw the defendant commit a traffic offense in New Hampshire. A high speed chase ensued in which the defendant fled to Maine. The officer followed defendant into Maine, apprehended him, and issued two summonses to him to appear in a New Hampshire court. The defendant challenged the officer's authority to issue the summonses in a foreign state. *Id.* at 726, 393 A.2d at 564.

The court first noted that the territorial jurisdiction of New Hampshire police extends only to the borders of the sovereign state of New Hampshire. However, the Uniform Law on Interstate Fresh Pursuit, adopted by both New Hampshire and Maine, allows border crossing if in fresh pursuit for a felony.

The authority of a New Hampshire State police officer while in a foreign jurisdiction is derived from the law of that jurisdiction. Thus, we look to Maine law to determine whether the officer in the present case had authority to issue valid summonses to the defendant. N.H. Const. pt. I, art. 7; RSA 625:4, :7 (1974). Maine law confers only limited authority on peace officers of a foreign State, specifically the authority to enter Maine and make an arrest if in fresh pursuit of a suspected *felon.* 15 Me.R.S.A. § 154 (1964). Neither offense committed by the defendant in the present case is a felony. Thus, because the New Hampshire officer was without authority to make an arrest, he was without authority to issue summonses to the defendant. R.S.A. 594:14 (Supp.1977).

*Id.* at 727–28, 393 A.2d at 565 (emphasis in original). It held that the summonses issued were invalid.

We find our relevant facts identical and New Hampshire's reasoning persuasive and in accord with due process. Just as in New Hampshire, the sovereignty and jurisdiction of Minnesota extend to all places within its boundaries. Minn.Stat. § 1.01 (1986). Both Minnesota and North Dakota have laws governing jurisdiction of foreign officers when in fresh pursuit of a suspected felon. Minn.Stat. §§ 626.65–.70 (1986); N.D.Cent.Code §§ 29–06–05 to –07 (1974). As in *Goff,* we examine the laws of North Dakota, the state in which the stop occurred, to determine whether this Minnesota peace officer had authority to arrest in North Dakota based on a fresh pursuit of someone who had committed a traffic offense less than a felony.

North Dakota law provides:

Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest him on the ground that he is believed to have committed a *felony in such other state,* shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county, or municipal peace unit of this state to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state.

N.D.Cent.Code § 29–06–05 (emphasis added). Thus, fresh pursuit and arrest by a foreign officer is authorized in North Dakota *for a felony.* We cannot read into a clear and unambiguous North Dakota law, which specifically used the word "felony," the inclusion of an entirely separate class of offense entitled "misdemeanor" or "petty misdemeanor." North Dakota courts and the North Dakota legislature alone have the right to set a lenient or a strict rule regulating the circumstances under which officers from other states can invade the sovereignty of North Dakota. We adopt the reasoning in *Goff,* and find that the Minnesota officer was without authority to make an arrest, as an officer, in North Dakota for a (petty) misdemeanor offense committed in Minnesota.

The Commissioner alternatively argues that the arrest was valid as a citizen's arrest, citing *State v. Sellers*, 350 N.W.2d 460 (Minn.Ct.App.1984). An examination of the pertinent facts in *Sellers* discloses its complete inapplicability to this case. In *Sellers*, a Wisconsin peace officer, who stopped a driver in the State of Minnesota, had observed criminal activity (traffic violations) in *both* states.

Although the above discussion addresses appellant's contention that he cannot be stopped in Minnesota for a petty misdemeanor committed in Wisconsin, the facts of this case also show adequate grounds for misdemeanor arrest in Minnesota. Speeding of 70 m.p.h., fishtailing, going through a stop sign at 35 miles per hour and crossing over the center line are all valid reasons for a stop.

*Id.* at 462.

Further, the jurisdictional question that appellant raises here was not in issue in *Sellers* because in *Sellers* the traffic offender who committed observable traffic violations in *Minnesota* was *tried* in Minnesota. Despite the Commissioner's contentions to the contrary, *Sellers* provides no support for his position. *Sellers* would only be in point had the Wisconsin officer come into Minnesota, observed no criminal activity in Minnesota, but stopped the driver anyway and brought the driver back to Wisconsin to stand trial in a Wisconsin court. We cannot speculate how a Wisconsin appellate court would have handled that fact situation.

We have not been provided with any authority indicating that a citizen in Minnesota, after observing a misdemeanor traffic offense in Minnesota, can follow that driver into another state and make a lawful arrest in that state.

The North Dakota Supreme Court considered an intrastate jurisdictional question in *State v. Littlewind*, 417 N.W.2d 361 (N.D.1987), which we find helpful. The question there arose as to the authority of a Bureau of Indian Affairs officer to follow a driver off an Indian reservation and stop, investigate, and arrest. The North Dakota Supreme Court found that the stop was valid because the peace officer, although without official capacity off the reservation, still retained the same rights as any citizen to make a "citizen's arrest." The *Littlewind* court stated:

Section 29–06–20, North Dakota Century Code, authorizes a private person to arrest another "[f]or a public offense committed or attempted in his presence * * *." A misdemeanor is a public offense. *State v. Bergeron*, 326 N.W.2d 684 (N.D.1982).

*Id.* at 363.

An examination of the facts in *Littlewind* and Section 29–06–20 makes it evident that North Dakota extends to private citizens in North Dakota the right to arrest another for a public offense committed or attempted to be committed in their presence *in North Dakota*, and to produce the evidence obtained after the arrest in a *North Dakota* court. If a private citizen in North Dakota sees someone committing a public offense in North Dakota, he or she can arrest. Thus, the BIA peace officer in *Littlewind*, although outside of his jurisdiction but still in North Dakota, would at least have that same right.

In our case, no criminal activity occurred in North Dakota, nor was the evidence collected there used in a North Dakota court. There is no jurisdiction under section 29–06–20 (1974) for a North Dakota citizen, and thus none for people from Minnesota attempting to act as North Dakota citizens, to arrest in North Dakota for criminal activity committed not in North Dakota, but in another state. It would be absurd to assume that the North Dakota legislature, in passing section 29–06–20, meant to provide that private persons had the right to arrest an individual in North Dakota for a misdemeanor if the offense occurred and the trial were to be, for instance, in Tennessee, Idaho, or Minnesota. We find no indication that the North Dakota legislature considers itself to have jurisdiction over misdemeanors committed in other states.

Except for N.D.Cent.Code § 29–06–05, previously referred to, which restricts itself

to felonies, no North Dakota law authorizes people in North Dakota to concern themselves with misdemeanors committed outside of North Dakota.

On these facts, Wicklund cannot satisfy either the prong of acting as an official peace officer, or acting as a private citizen. As a duly authorized peace officer, he can act only under color of North Dakota law when in fresh pursuit of a felon. He could make a citizen's arrest if the offending acts were committed in North Dakota and resulted in a trial in North Dakota. Here, we have neither. The North Dakota legislature neither has, nor claims, the authority to establish jurisdiction in Minnesota courts for misdemeanors committed in Minnesota.

We also find helpful another North Dakota case, *City of Wahpeton v. Johnson,* 303 N.W.2d 565 (N.D.1981). There the driver went from North Dakota into Minnesota followed by North Dakota police. The North Dakota Supreme Court satisfied itself that the driver's trial in North Dakota was constitutionally appropriate as they found that he had not been arrested in Minnesota, and that the evidence was collected and the formal arrest was made in North Dakota where the trial was held. These are not our facts and, by implication, the North Dakota Supreme Court recognized that, had there been an arrest and a collection of evidence in Minnesota, it would have been an illegal arrest, absent the driver (Johnson) being duly taken before a Minnesota judge for criminal acts committed in Minnesota.

> Officer Becker recognized that in Minnesota he was "acting as a private citizen," and testified that Johnson would have been free to remain in Minnesota had he so chosen. As police officers of a North Dakota municipality, they had authority, under the Minnesota "hot pursuit" statute, to arrest only a person suspected of a *felony.* M.S.A. § 626.65. No citizen's arrest was attempted, nor was Johnson taken before a magistrate in Minnesota. M.S.A. § 626.66. All of this is consistent with the fact that the officers made no formal arrest until they returned to

> Wahpeton. *Because no arrest was effected,* there can be no issue of illegality. *Id.* at 567 (emphasis added).

Had appellant here been brought before a North Dakota judge to face charges for criminal activities occurring in North Dakota, although we do not reach the issue, clearly the holdings of *Sellers* and *Wahpeton* indicate that a Minnesota police officer could then testify in a North Dakota court. There would not then be the substantial issue of territorial sovereignty and infringement upon state's rights that is presented here.

■ The Commissioner also argues that appellant, in any event, agreed to being brought back to Minnesota for prosecution, and thus waived any jurisdictional objection. In the factual context of this case, we find no such waiver. Here, a Minnesota citizen was apprehended in North Dakota by a Minnesota peace officer acting under "full color" of office with marked squad car, flashing lights, badge, gun, and uniform. He was then told by that officer that he can come back to Minnesota voluntarily and face charges in just one state, or stay in North Dakota and risk facing charges in both states. At that point, appellant was misled as to substantial rights. We find appellant's return to Minnesota was hardly the product of a knowing and voluntary waiver of a jurisdictional defense, which, if found, constitutes a complete bar to prosecution.

■ A Minnesota citizen is not afforded due process if, while standing in North Dakota, he is required to make an on-the-spot choice without counsel of whether to stay in North Dakota or return to Minnesota and have that choice irrevocably affect substantial rights.

We find that since the stop in North Dakota was neither the result of fresh pursuit of a fleeing felon by a peace officer nor the product of observable criminal activity in North Dakota, Wicklund had neither a peace officer's authority nor the right of a private person to make a stop and arrest. Thus, the fruits of that stop and arrest, namely the collection of evidence that appellant violated the Minnesota

implied consent law, must be suppressed, and appellant's driving privileges returned.

## DECISION

The order of the trial court sustaining the revocation of appellant's driving privileges is reversed.

REVERSED.