**STATE of Minnesota, Appellant,**

**v.**

**Jeffrey James VIVIER, a/k/a James Jeffrey Vivier, a/k/a James Vivier, Respondent.**

**No. C2–89–1985.**

Court of Appeals of Minnesota.

April 3, 1990.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Wayne H. Swanson, Polk County Atty., Crookston, for appellant.

John M. Stuart, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for respondent.

Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for amicus curiae, Atty. Gen.

Considered and decided by RANDALL, P.J., and FOLEY and GARDEBRING, JJ.

## OPINION

RANDALL, Judge.

The State of Minnesota appeals the trial court's decision to dismiss a criminal complaint against respondent Jeffrey James Vivier on jurisdictional grounds. Because the arrest of respondent was valid under the North Dakota *felony* fresh pursuit statute, we reverse and remand for trial.

## FACTS

On August 6, 1989, at approximately 2:40 a.m., Officer George LeTexier of the East Grand Forks Police Department observed a vehicle park in front of the closed Pick–A–Flick video store in East Grand Forks, Minnesota. The officer saw the driver, later identified as respondent, get out of the vehicle, walk around to the front, and bend down. Respondent then entered the closed video store through the front door. A short time later, respondent left the store, got in his vehicle, and began driving away.

Respondent's activities aroused LeTexier's suspicion. LeTexier decided to stop respondent and question him regarding his entry into the closed video store. When LeTexier caught up to respondent's vehicle, he turned on the squad car's lights and siren. Respondent's vehicle immediately took off at a high rate of speed toward the bridge connecting the city of East Grand Forks, Minnesota with Grand Forks, North Dakota, and a high-speed chase ensued. LeTexier pursued respondent across the bridge into North Dakota.

When the chase finally ended, the officer ordered respondent out of the vehicle, pat-searched respondent for weapons, and handcuffed him. Officer LeTexier noticed that respondent's eyes were bloodshot and watery, and the officer smelled the odor of alcohol on respondent's breath. A preliminary breath test indicated that respondent had a probable blood alcohol concentration over the legal limit. The officer placed respondent in the rear of the squad car. A subsequent search of respondent's vehicle revealed a checkbook with respondent's name on it and three cans of beer, one of which was open.

Shortly after the chase ended, a Polk County (Minnesota) deputy sheriff and a North Dakota state highway patrol officer arrived at the scene. The officers asked respondent whether he would agree to return to Minnesota or whether he would prefer to remain in North Dakota to face charges. Respondent first refused to answer the question, then attempted to determine whether DWI is a misdemeanor in Minnesota. LeTexier told respondent that DWI is a misdemeanor in both North Dakota and Minnesota. The North Dakota highway patrol officer told respondent that he would face the same charges in North Dakota as he would in Minnesota. Respondent agreed to return to Minnesota.

LeTexier transported respondent to the East Grand Forks Police Department where implied consent procedures were performed and respondent was booked. Respondent refused to consent to a breath test. Respondent's driver's license had been revoked due to a prior conviction for driving while under the influence of alcohol.

Further investigation revealed that respondent had a key to enter the Pick–A–Flick video store, and at the time of the incident, lived in a room in the building in which the video store was located. Be-

cause of this information, no burglary charges were filed and no issue of burglary or attempted burglary now exists. Respondent was subsequently charged in Polk County District Court with: (1) fleeing a peace officer in a motor vehicle; (2) driving while under the influence of alcohol after revocation for driving while under the influence of alcohol; (3) driving while under the influence of alcohol within five years of a prior conviction for driving under the influence of alcohol; (4) driving while under the influence of alcohol; (5) driving after revocation; and (6) possession of open bottle.

At a supplemental omnibus hearing, respondent moved to dismiss the complaint claiming the Minnesota officer had no jurisdiction to make an arrest in North Dakota. LeTexier testified that he decided to stop respondent because he wanted to know whether respondent had a reason for being in the closed video store, and because he suspected respondent of possibly burglarizing the closed video store. The officer also testified that he formally arrested respondent in North Dakota for fleeing and driving while under the influence.

The trial court granted respondent's motion to dismiss relying on *Piotrowski v. Commissioner of Public Safety*, 433 N.W.2d 124 (Minn.Ct.App.1988), *pet. for rev. granted* (Minn. Feb. 10, 1989) (*Piotrowski* I).[1] The trial court found that the stop of respondent's vehicle was based on a "particular and objective basis for suspecting criminal activity," not on probable cause to believe a felony had occurred. Thus, the court concluded the Minnesota police officer was not authorized by North Dakota's felony fresh pursuit statute to arrest respondent.

## ISSUE

Did the trial court err by concluding that the stop and subsequent arrest of respondent by a Minnesota peace officer in North Dakota was invalid?

1. *Piotrowski* I held that a Minnesota police officer lacks authority in North Dakota to perform a fresh pursuit or citizen's arrest for a *misdemeanor committed in Minnesota. Piotrowski* I, and the companion case of *State v. Piotrowski,*

## ANALYSIS

This case presents a question of law based on the uncontradicted testimony of Officer LeTexier. We review questions of law de novo and do not defer to the conclusions reached by the trial court. *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985).

■ The validity of respondent's arrest in North Dakota depends on "whether 'fresh pursuit' or 'citizen's arrest' legitimize the foreign-state stop" by the Minnesota police officer. *Piotrowski* I, 433 N.W.2d at 127. Whether a foreign officer has jurisdiction to make an arrest in a neighboring state based on fresh pursuit of a person who has committed a criminal act depends on the law of the state in which the arrest was made. *United States v. Di Re*, 332 U.S. 581, 589, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948); *Piotrowski* I, 433 N.W.2d at 127; *State v. Goff*, 118 N.H. 724, 727–28, 393 A.2d 562, 565 (1978). Thus, we must examine North Dakota's version of the Uniform Law on Interstate Fresh Pursuit to determine whether this arrest was authorized.

■ The North Dakota statute provides: Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest him *on the ground that he is believed to have committed a felony in such other state,* shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county, or municipal peace unit of this state to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state.

N.D.Cent.Code § 29–06–05 (1974) (emphasis added). "Fresh pursuit" is also defined by statute:

435 N.W.2d 573 (Minn.Ct.App.1989), *pet. for rev. granted* (Minn. Mar. 17, 1989) (*Piotrowski* II) were argued before the Minnesota Supreme Court on September 7, 1989.

As used in section 29–06–05, the term "fresh pursuit" shall include fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. *It also shall include the pursuit of a person suspected of having committed a supposed felony, though no felony has been actually committed, if there is reasonable ground for believing that a felony has been committed.* Fresh pursuit, as the term is used in this chapter, shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.

N.D.Cent.Code § 29–06–07 (1974) (emphasis added). These statutes authorize entry into North Dakota by a foreign officer to arrest a suspect when the officer believes the suspect committed a felony in another jurisdiction, and the officer enters North Dakota in fresh pursuit of that suspect. *See Piotrowski* I, 433 N.W.2d at 127.

■ Appellant first argues that misdemeanor fresh pursuit arrests are authorized under North Dakota law because "they are not specifically excluded." This argument is totally without merit. As we stated in *Piotrowski* I:

> We cannot read into a clear and unambiguous North Dakota law, which specifically used the word "felony," the inclusion of an entirely separate class of offense entitled "misdemeanor" or "petty misdemeanor."

*Id.* The statute authorizing fresh pursuit arrests creates a specific exception to the normal warrant requirement, and must be narrowly construed. Appellant's proposed construction of the North Dakota law fails in view of the firmly established rule that requires strict construction of criminal statutes against the state and in favor of a defendant. *See, e.g., State v. Soto*, 378 N.W.2d 625, 627–28 (Minn.1985) (Minnesota courts follow "a long tradition of strictly construing penal statutes."). We will not interpret the North Dakota statute to permit fresh pursuit arrests in North Dakota by Minnesota peace officers when all that exists is the suspicion, even though reasonable, that only a misdemeanor was committed in Minnesota. Appellant argues vigorously that misdemeanor fresh pursuit authority is needed by Minnesota peace officers in border areas to prevent traffic offenders and suspected DUI drivers from hightailing it across the North Dakota (or any other neighboring state) border. Appellant correctly points out that high speed flight endangers both those involved in the chase and others on the highway. We accept the logic of appellant's position. However, Minnesota courts may not redraft laws duly enacted by the legislature of neighboring states. Recognition of and respect for territorial borders, rights of egress and access, and matters such as extradition are essential to this country's federal system of government in which 50 separate states and one central government share power. These matters were hotly contested and debated by the first constitutional convention over 200 years ago, and remain important today. Any changes about what Minnesota peace officers can do in North Dakota have to come from North Dakota lawmakers and North Dakota courts.

■ Appellant next contends that both the stop and subsequent arrest for drinking and driving violations were valid because LeTexier reasonably suspected that respondent had burglarized the video store, a felony in both Minnesota and North Dakota. *See* Minn.Stat. § 609.582, subd. 3 (1988); N.D.Cent.Code § 12.1–22–02 (1974). The trial court rejected this claim, but we find the record firmly supports appellant's position and, on the issue of felony fresh pursuit, we reverse. Before he began pursuing respondent, Officer LeTexier observed respondent drive up to a closed video store at 2:40 a.m., park, get out of his vehicle, walk around to the front of the vehicle and bend down, then walk up to the door of the video store and enter. Shortly thereafter, Officer LeTexier saw respondent exit the store and drive away. The trial court found that these facts provided Officer LeTexier with sufficient grounds only to make an auto stop of respondent in Minnesota, but not to pursue him into North Dakota. The trial court found Le-

Texier's observations supplied an "objective basis for suspecting * * * criminal activity,"[2] but not probable cause to believe that a felony occurred. The essence of the issue in dispute is the heart of the trial court's memorandum of law:

> The *Piotrowski* case is dispositive of our case. The *Terry* stop the officer was attempting was not based upon probable cause to believe a felony occurred but, rather, was based upon a particular and objective basis for suspecting criminal activity. This was not a 'felony pursuit so as to allow the stop.

A review of objective facts not in dispute, namely respondent's movements at the store at 2:40 a.m. *plus* his immediate flight from LeTexier when initially signaled to stop, distinguishes this case from the *Piotrowski* facts and leads us to conclude that the totality of the facts observed by LeTexier led him to reasonably believe that respondent committed a felony in Minnesota. *See State v. Driscoll*, 427 N.W.2d 263, 265 (Minn.Ct.App.1988); *State v. Lind*, 322 N.W.2d 826, 833 (N.D.1982).

Specifically, when LeTexier tried to stop respondent's vehicle, respondent immediately and at a high speed took off towards the North Dakota border just blocks away. LeTexier testified that respondent's vehicle was traveling at speeds of up to 100 miles-per-hour after it crossed the North Dakota border. Respondent's reaction to LeTexier's attempt to stop the vehicle, coupled with LeTexier's earlier observations, supplied LeTexier with probable cause to suspect respondent of having committed a felony. Because we find the stop in North Dakota was valid on a felony fresh pursuit basis, the fact that the ultimate charges were drinking and driving offenses rather than burglary or theft is immaterial. It is settled law that if a peace officer makes a valid stop, evidence of crimes which come to his attention, although different from the crime for which the initial stop was made, can be utilized. *See State v. Smith*, 452 N.W.2d 86, 89–90 (N.D.1990) (firearms discovered during stop based on suspicion of open bottle violation admissible in subse-

quent prosecution for possession of firearms by felon). After the stop, LeTexier testified that he smelled alcohol on respondent's breath, noticed his bloodshot and watery eyes, and other indicia of DUI in addition to the fleeing.

The law that controls, North Dakota law, only requires probable cause to believe that the fleeing person has committed a felony in another state, and specifically includes within the definition of "fresh pursuit," pursuit of a person suspected of committing a felony *even if no felony has been actually committed*. *See* N.D.Cent.Code § 29–06–07. The filing of felony charges against an arrestee is not required to validate a fresh pursuit arrest. *See Id.*

Here, LeTexier had a reasonable basis for suspecting respondent of a possible felony, e.g., burglary and/or theft of the video store. Respondent's actions in entering a store at a late hour and then exiting shortly thereafter, standing alone, would not, without more, be probable cause for a felony arrest. But the facts here show more, namely respondent's immediate flight after LeTexier pulled up behind him and signaled him to stop. Respondent's flight when LeTexier tried to stop him for questioning supplied LeTexier with probable cause to believe that a burglary/theft had occurred in Minnesota. *See Peters v. New York*, 392 U.S. 40, 69, 88 S.Ct. 1912, 1912–13, 20 L.Ed.2d 917 (1968) (flight in response to the approach of law officer is evidence of criminal intent); *State v. Valstad*, 282 Minn. 301, 310, 165 N.W.2d 19, 25 (1969) (officers' suspicions justified by driver's attempt to elude following squad car); *State v. Indvik*, 382 N.W.2d 623, 627–28 (N.D.1986) (suspect's actions subsequent to officer's attempt to stop vehicle, including flight, supplied probable cause for warrantless arrest).

We understand the trial court's reliance on *Piotrowski* I to dismiss the complaint against respondent. The two states involved are identical, and the facts have several similarities. But, the key difference is that in *Piotrowski*, the criminal

---

**2.** *See United States v. Cortez*, 449 U.S. 411, 417–   18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981).

activity in question started with a misdemeanor (or petty misdemeanor), continued with a misdemeanor, ended with a misdemeanor, and it was never claimed that the officer pursuing Piotrowski into North Dakota had probable cause to suspect him of having committed a recent felony. The record here supports the finding of felony fresh pursuit,[3] unlike *Piotrowski* I, which was confined to misdemeanor fresh pursuit. *Piotrowski* I acknowledges the propriety of a fresh pursuit arrest when probable cause exists to believe the person arrested in North Dakota committed a felony in Minnesota. *Piotrowski* I held only that the North Dakota fresh pursuit statute did not authorize arrest in North Dakota of persons suspected of committing *misdemeanors* in Minnesota. *Piotrowski* I, 433 N.W.2d at 127.

North Dakota law requires that a person arrested under the felony fresh pursuit provision be taken before a magistrate to determine the lawfulness of the arrest and, if lawful, the magistrate shall set bail or hold the person over pending extradition warrant of the governor. N.D.Cent.Code § 29–06–06 (1974). The statutory procedures for obtaining the return of respondent to Minnesota were not complied with in this case. The defect is not fatal here since respondent voluntarily decided to return to Minnesota, after considering which state to face charges in. However, we strongly disapprove of the practice of side-stepping extradition procedures and discussing important legal matters relating to jurisdiction with an individual who is under the influence of alcohol and without counsel. Since Minnesota peace officers have the privilege of availing themselves of North Dakota's felony fresh pursuit statute, the officers have the concurrent obligation to respect North Dakota laws governing extradition. In future cases, Minnesota peace officers should scrupulously honor extradition laws of states in which the suspected fleeing felon is captured.

Appellant requested oral argument in the Ninth Judicial District. The Office of the State Public Defender has moved for reimbursement of travel expenses incurred to attend oral argument pursuant to Minn.R. Crim.P. 28.04, subd. 2(6). We find the expense authorized, the request proper, and direct appellant to pay $176 to the State Public Defender as the requested reimbursement.

## DECISION

The trial court erred by dismissing the charges against respondent for lack of jurisdiction. The undisputed facts provided a legal basis for a Minnesota peace officer to utilize the North Dakota felony fresh pursuit statute. Thus, the stop in North Dakota was proper and the resulting evidence gathered, even though for drinking and driving violations, and not burglary or theft, may be utilized to prosecute respondent.

Reversed and remanded.

---

**3.** Because we conclude the arrest was authorized pursuant to the fresh pursuit statute, we do not address appellant's claim that LeTexier made a valid citizen's arrest.