Brian Scott **BOLAND**, Petitioner,
Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. C0–94–591.

Court of Appeals of Minnesota.

Aug. 16, 1994.

Brian W. Nelson, Nelson Law Office, Fargo, ND, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and NORTON and SCHULTZ,* JJ.

## OPINION

HAROLD W. SCHULTZ, Judge.

The Commissioner of Public Safety appeals, arguing that the district court erred by (1) suppressing respondent's alcohol concentration test results; (2) finding that the Minnesota police officer had not complied with the North Dakota Implied Consent statute; and (3) rescinding the revocation of respondent's driving privileges.

## FACTS

In the early morning hours of October 31, 1993, Minnesota police officer Stephen Landsem was dispatched to the scene of a one-car accident near Hawley, Minnesota. Officer Landsem arrived at approximately 6:54 a.m. and learned that the male driver was in a nearby home. Officer Landsem was unable to speak with the male driver, Brian Boland, before he was taken by ambulance to Dakota Hospital in Fargo, North Dakota.

Officer Landsem inspected Boland's car and found several beer cans. He then went to Dakota Hospital to continue his investigation. The ambulance driver told Officer Landsem that he smelled alcohol on Boland. During his interview with Boland, Officer Landsem also detected the odor of alcohol and noted Boland's slurred speech. At 8:07 a.m., Officer Landsem read Boland the Minnesota Implied Consent Advisory. Boland stated that he understood the advisory and consented to a blood test. The test results showed a blood alcohol level 0.10 or more, and the Commissioner of Public Safety (the Commissioner) revoked Boland's driving privileges.

Boland petitioned for review of the revocation, arguing that Officer Landsem lacked probable cause to believe that Boland was actually the driver of the car; that Officer Landsem acted outside of his jurisdiction; and that Boland did not receive immediate notice of revocation as required by the statute.

The district court determined that Officer Landsem had probable cause to believe that Boland was the driver of the car. The court found, however, that Officer Landsem lacked authority to enforce the Minnesota implied consent law and to request a blood test from Boland while he was in North Dakota. The court held that North Dakota law governed Officer Landsem's actions.

The court found that, according to North Dakota implied consent law, an arrest must precede an officer's request for a blood alcohol test. Because Boland was never formally arrested, the court suppressed the test results and rescinded Boland's revocation. The Commissioner appeals.

## ISSUE

When an alleged intoxicated driver has been transported from Minnesota to North Dakota for medical treatment, does the North Dakota Implied Consent law govern a Minnesota police officer's request for a blood alcohol test made in North Dakota even though the accident occurred in Minnesota?

## ANALYSIS

Whether the district court reached the proper conclusion is a question of law for the reviewing court to determine. *Donovan v. Dixon,* 261 Minn. 455, 460, 113 N.W.2d 432, 435 (1962); *State v. Vivier,* 453 N.W.2d 713, 715 (Minn.App.1990) (appellate court reviews "questions of law de novo and [need] not defer to the conclusions reached by the trial court.").

In the present case, the district court determined that North Dakota law governed Officer Landsem's actions when he went to

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

the hospital to interview Boland. The court based its conclusion on the North Dakota "fresh pursuit" statute which reads:

Any member of a duly organized state, county, or municipal law enforcement unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest the person on the ground that the person is believed to have committed a felony, misdemeanor, or traffic violation in such other state, shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county, or municipal law enforcement unit of this state to arrest and hold in custody a person on the ground that the person is believed to have committed a felony, misdemeanor, or traffic violation in this state.

N.D.Cent.Code § 29–06–05 (1991).

The court also relied on this court's opinion in *State v. Vivier*, 453 N.W.2d 713, 716 (Minn.App.1990). *Vivier* questioned whether a Minnesota police officer could pursue a suspected *misdemeanant* across the North Dakota state line to arrest for illegal conduct witnessed within the state of Minnesota. When the *Vivier* opinion was filed, the applicable North Dakota statute allowed only the fresh pursuit of and arrest of suspected felons. Thus, the *Vivier* court refused to "redraft laws duly enacted by the legislature of neighboring states" to include fresh pursuit and arrest of misdemeanant suspects.[1] *Id.* (citing N.D.Cent.Code § 29–06–05 (1974)).

The *Vivier* opinion did not hold that North Dakota implied consent law applies when a Minnesota police officer crosses state lines in pursuit of a suspected felon. Rather, the North Dakota fresh pursuit statute provides only that a Minnesota police officer has the same authority as a North Dakota officer *to arrest* if the officer witnessed illegal conduct in the home state and freshly pursued the suspect across the state line.

Several days after publication of the *Vivier* opinion, the Minnesota Supreme Court released three opinions that reversed the court of appeals in cases factually similar to *Vivier*. *See Piotrowski v. Commissioner of Pub. Safety*, 453 N.W.2d 689 (Minn.1990); *State v. Torgerson*, 453 N.W.2d 698 (Minn.1990); *State v. Ault*, 453 N.W.2d 699 (Minn.1990). The *Piotrowski* line of cases held that Minnesota police officers are not powerless to pursue a suspected misdemeanant across the North Dakota border as long as the officer

makes the stop, contacts the police in the jurisdiction where the stop is made, and then does one of three things: makes a citizen's arrest (which involves taking the suspect before a magistrate in that jurisdiction), turns the suspect over to a police officer in that jurisdiction (who makes the arrest), or obtains the suspect's consent to return voluntarily to the state where the fresh pursuit began.

*Piotrowski*, 453 N.W.2d at 691.

The facts of this case, however, raise an issue beyond that decided by the *Piotrowski* line of cases. The issue here is whether North Dakota or Minnesota implied consent law governs. The causal connection between the district court's reliance on North Dakota's fresh pursuit statute and its legal conclusion that North Dakota implied consent law governs is not clear.

Even more troublesome is the fact that the court relied on the fresh pursuit statute but found it "questionable whether or not the petitioner in this action was freshly pursued into North Dakota by Officer Landsem." The facts more logically suggest that Officer Landsem was legally continuing his investigation and gathering evidence regarding an accident that arose in Minnesota with a suspect who was receiving medical attention in North Dakota.

The record also supports an inference that Officer Landsem notified Boland that he was under arrest. The language of the Minnesota Implied Consent Advisory read to Boland states in part:

Brian Scott Boland, I believe you have been driving, operating or controlling a motor vehicle while under the influence of

---

1. The North Dakota statute was amended, effective March 26, 1991, to include fresh pursuit of suspected misdemeanants. *See* N.D.Cent.Code § 29–06–05 (1991).

alcohol or a controlled substance "and you have been placed under arrest for this offense," "or you have been involved in a motor vehicle accident resulting in property damage, personal injury, or death."

1. Minnesota law requires you to take a test to determine if you are under the influence of alcohol or a controlled substance.

2. Refusal to take a test is a crime. Apparently, the district court determined that even reading the Minnesota Implied Consent Advisory was per se invalid in North Dakota. Yet, a North Dakota police officer could not have invoked the North Dakota implied consent law to request a test from Boland because the North Dakota "statute assumes that the law enforcement officer is acting within his or her jurisdiction." *Davis v. Director, N.D. Dep't of Transp.*, 467 N.W.2d 420, 422 (N.D.1991) (refusing to allow a North Dakota peace officer to request a blood alcohol test where the driving conduct occurred within North Dakota but the suspect was transported onto the Turtle Mountain Indian Reservation).

Moreover, Minnesota law allows that:

Relevant evidence shall not be excluded in any criminal trial or hearing or in any proceeding arising under section 169.123 on the ground that it existed or was obtained outside of this state.

Minn.Stat. § 634.30 (1992). Here, Officer Landsem proceeded in accordance with Minnesota law and all aspects of the Minnesota Implied Consent Law were complied with properly. The net effect of the district court's order is to make Boland immune from prosecution in either state and to preclude a Minnesota police officer from gathering evidence in an investigation in another state and applying the Minnesota Implied Consent Law.

### DECISION

The district court erred in determining that North Dakota implied consent law applied. The district court's order rescinding the revocation of Boland's driving privileges was based on an error of law.

**Reversed.**

RANDALL, Judge (concurring specially).

I concur in the result.