Jensen, Justice.
[¶ 1] Harold Olson appeals a district court order affirming the North Dakota Department of Transportation's ("Department") revocation of his driving privileges for two years, following an arrest for driving under the influence. We reverse the district court's order and reinstate Olson's driving privileges.
I
[¶ 2] A deputy with the Mountrail County Sheriff's Department testified he received a call from a Three Affiliated Tribes, also known as the Mandan, Hidatsa and Arikara Nation ("MHA"), officer on May 13, 2017 requesting assistance with a non-Indian he stopped and detained on tribal land. The MHA officer told the deputy he detained the individual because he was parked in the middle of the road asleep at the wheel. The MHA officer asked the deputy to complete an investigation.
[¶ 3] The deputy identified the driver as Harold Olson. The deputy noted a strong odor of what appeared to be an alcoholic beverage, administered field sobriety tests, determined he had probable cause to arrest Olson, and then arrested Olson for driving under the influence. The deputy read Olson his Miranda rights and the implied consent advisory. Olson refused to take a breath test. The deputy issued Olson a report and notice form under N.D.C.C. ch. 39-20.
[¶ 4] Olson timely requested an administrative hearing. At the administrative hearing, the deputy testified that tribal police investigate and arrest an individual for crimes on tribal land, such as driving under the influence, if the individual is an enrolled member of a tribe. The deputy and the MHA officer were not aware Olson was a member of any tribe at the time of the arrest.
[¶ 5] At the administrative hearing, Olson offered his tribal identification card, which indicated he was a member of the Turtle Mountain Chippewa Tribe. Olson did not have his tribal identification card in his vehicle when the MHA officer stopped him. Olson said he was "pretty sure" he told the MHA officer he was an enrolled member of a tribe. Olson testified he understood a tribal police officer would have investigated him, instead of calling county or state police, if he knew Olson was an enrolled member of a tribe at the time of the stop.
[¶ 6] The administrative hearing officer concluded the deputy had reasonable grounds to believe Olson was driving or in actual physical control of the vehicle while under the influence of intoxicating liquor and had authority to arrest Olson because of the MHA officer's request for assistance. Olson's driving privileges were thereafter revoked for a period of two years. The district court affirmed the Department's decision finding the deputy was acting under a request for assistance, *679 which extended the deputy's authority to arrest onto tribal land.
[¶ 7] The parties do not dispute the following facts: (1) Olson was discovered in his vehicle by a MHA officer on tribal land within the Fort Berthold Reservation, (2) the MHA officer requested assistance from the Mountrail County Sheriff's Department, (3) the deputy completed an investigation and arrested Olson for driving under the influence on tribal land within the Fort Berthold Reservation, (4) Olson is an enrolled member of the Turtle Mountain Chippewa Tribe, and (5) the MHA officer and the deputy did not know Olson was an enrolled member at the time of the arrest.
II
[¶ 8] This Court reviews an administrative driver's license revocation under N.D.C.C. § 28-32-46. Vanlishout v. N.D. Dep't of Transp. , 2011 ND 138, ¶ 12, 799 N.W.2d 397. Proceedings under N.D.C.C. ch. 39-20, which relate to the revocation of driving privileges, are civil in nature and separate from criminal proceedings. Beylund v. Levi , 2017 ND 30, ¶ 17, 889 N.W.2d 907. We must affirm the Department's order for revocation unless:
1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.
N.D.C.C. § 28-32-46. "We review appeals from the final judgment of a district court in the same manner as provided for in N.D.C.C. § 28-32-46 or N.D.C.C. § 28-32-47." Deeth v. Dir., N.D. Dep't of Transp. , 2014 ND 232, ¶ 11, 857 N.W.2d 86. "An agency's conclusions on questions of law are subject to full review." Vanlishout , at ¶ 12.
III
[¶ 9] Olson argues the deputy lacked the authority to arrest him on tribal land and that a valid arrest is a prerequisite to revocation of his driving privileges. Absent a valid arrest, Olson argues the revocation order is not in accordance with the law.
[¶ 10] The revocation of an individual's driving privileges in North Dakota is governed by N.D.C.C. ch. 39-20. The Department concedes that revocation of Olson's driving privileges for refusal to submit to a chemical test requires a valid arrest. See N.D.C.C. § 39-20-01(2) ; Kroschel v. Levi , 2015 ND 185, ¶ 36, 866 N.W.2d 109.
[¶ 11] When state officers have criminal jurisdiction, they also have the authority to arrest. See State v. Wilkie , 2017 ND 142, ¶¶ 8-10, 895 N.W.2d 742. In this case, the issue is whether the State has criminal jurisdiction over a non-member Indian and the accompanying authority to arrest on tribal land.
*680 A
[¶ 12] This Court has stated:
"Only the Congress can take from the Indians their jurisdiction over their own reservation." Gourneau v. Smith , 207 N.W.2d 256, 259 (N.D. 1973). Although the State could have, pursuant to congressional statute, at one time unilaterally assumed criminal jurisdiction over Indian reservations within the State, it did not elect to do so. The State is precluded from doing so in the absence of complying with established congressional procedures. Kennerly v. District Court of Montana , 400 U.S. 423, 91 S.Ct. 480, 27 L.Ed.2d 507 (1971).
Davis v. O'Keefe , 283 N.W.2d 73, 75-76 (N.D. 1979) (footnote omitted). The United States Supreme Court has stated:
[T]he assertion of state authority over tribal reservations remains subject to "two independent but related barriers." White Mountain Apache Tribe v. Bracker , 448 U.S. 136, 142, 100 S.Ct. 2578, 2583, 65 L.Ed.2d 665 (1980). First, a particular exercise of state authority may be foreclosed because it would undermine " 'the right of reservation Indians to make their own laws and be ruled by them.' " Ibid. , quoting Williams v. Lee , 358 U.S. [217,] 220, 79 S.Ct. [269] 270, [3 L.Ed.2d 251 (1959) ]. Second, state authority may be preempted by incompatible federal law. White Mountain , 448 U.S., at 142, 100 S.Ct. at 2583.
Three Affiliated Tribes v. Wold Eng'g, P.C. , 467 U.S. 138, 147, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). As such, because the State did not elect to assume criminal jurisdiction over tribal lands, the State is foreclosed from exercising criminal jurisdiction within the boundaries of the MHA because we conclude the MHA has criminal jurisdiction and state jurisdiction would undermine the MHA's right to make its own laws and be ruled by them.
[¶ 13] Olson argues the United States Supreme Court's decision in United States v. Lara , 541 U.S. 193, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004), interpreting the impact of amendments to 25 U.S.C. § 1301, confirms that the MHA has criminal jurisdiction over non-member Indians on MHA tribal land. Congress amended 25 U.S.C. § 1301 to provide that Indian tribes have authority to "exercise criminal jurisdiction over all Indians." Lara , 541 U.S. at 197-98, 124 S.Ct. 1628 (quoting 25 U.S.C. § 1301(2) ). In its entirety, 25 U.S.C. § 1301 provides:
(1) "Indian tribe" means any tribe, band, or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government;
(2) "powers of self-government" means and includes all governmental powers possessed by an Indian tribe, executive, legislative, and judicial, and all offices, bodies, and tribunals by and through which they are executed, including courts of Indian offenses; and means the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians;
(3) "Indian court" means any Indian tribal court or court of Indian offense; and
(4) "Indian" means any person who would be subject to the jurisdiction of the United States as an Indian under section 1153, Title 18, if that person were to commit an offense listed in that section in Indian country to which that section applies.
[¶ 14] The amendment to 25 U.S.C. § 1301 was in direct response to the United States Supreme Court's decision interpreting the prior version of 25 U.S.C. § 1301 as being limited to allowing tribes to exercise jurisdiction only over its own *681 members. Lara , 541 U.S. at 197-98, 124 S.Ct. 1628 (citing Duro v. Reina , 495 U.S. 676, 682, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990) ). In Lara , the United States Supreme Court concluded Congress superceded Duro by modifying 25 U.S.C. § 1301 to grant tribes criminal jurisdiction over "all Indians." 541 U.S. at 197-98, 124 S.Ct. 1628. Accordingly, under 25 U.S.C. § 1301 and Lara , tribes have jurisdiction over crimes committed by non-member Indians on tribal land. Id. at 210, 124 S.Ct. 1628. The State does not have criminal jurisdiction over those crimes because, as discussed above, it never elected to exercise criminal jurisdiction on tribal lands and to do so would "undermine the right of reservation Indians to make their own laws and be ruled by them." Wold Eng'g , 467 U.S. at 147, 104 S.Ct. 2267 (citation and quotation marks omitted).
[¶ 15] "Generally, a valid arrest may not be made outside the territorial jurisdiction of the arresting authority." State v. Hook , 476 N.W.2d 565, 566 (N.D. 1991) (citations omitted). We will reverse a Department decision when the arresting officer lacked authority in the location where the arrest was made. Kroschel , 2015 ND 185, ¶¶ 36-37, 866 N.W.2d 109. Here, the MHA, not the State, had criminal jurisdiction over Olson, a non-member Indian, on the MHA's land. Lacking criminal jurisdiction, the deputy had no authority to arrest Olson and the Department could not satisfy the requirement that there be a valid arrest as provided in N.D.C.C. § 39-20-01(2).
B
[¶ 16] The Department contends the MHA officer's request for assistance from Mountrail County extended criminal jurisdiction to the State. Section 44-08-20, N.D.C.C., provides:
Peace officers employed by a law enforcement agency within the state have the power of a peace officer in the following circumstances:
1. To enforce state laws and rules within the jurisdiction of the law enforcement agency by which they are employed.
2. To assist during the necessary absence from office by the requesting officer.
3. When responding to requests from other law enforcement agencies or officers for aid and assistance. For the purposes of this subsection, such a request from a law enforcement agency or officer means only a request for assistance as to a particular and singular violation or suspicion of violation of law, and does not constitute a continuous request for assistance outside the purview of the jurisdiction of the law enforcement agency by which a peace officer is employed.
[¶ 17] The Department's reliance on N.D.C.C. § 44-08-20 is misplaced. As reflected in decisions discussing the authority of a law enforcement officer from one state to initiate an arrest in another state, the authority to arrest cannot be created by the foreign jurisdiction. In the absence of statutory authority or an agreement, a peace officer lacks jurisdiction to arrest in another state. See City of Wahpeton v. Johnson , 303 N.W.2d 565, 567 (N.D. 1981) (noting no arrest took place, but a North Dakota officer lacked jurisdiction to arrest an individual for a misdemeanor in Minnesota when a statute allowed for interstate fresh pursuit only for felonies); Piotrowski v. Comm'r of Pub. Safety , 453 N.W.2d 689, 691 (Minn. 1990) (concluding a longstanding agreement between the police departments in Moorhead, Minnesota and Fargo, North Dakota about misdemeanor fresh pursuit arrest procedure was validly followed by a Minnesota officer *682 pursuing an individual into North Dakota); Minnesota v. Vivier , 453 N.W.2d 713, 715-16 (Minn. Ct. App. 1990) (determining a Minnesota officer had valid jurisdiction to arrest in compliance with the North Dakota felony fresh pursuit statute). The Minnesota Court of Appeals, when considering jurisdictional issues between Minnesota and North Dakota related to fresh pursuit, noted:
Minnesota courts may not redraft laws duly enacted by the legislature of neighboring states. Recognition of and respect for territorial borders, rights of egress and access, and matters such as extradition are essential to this country's federal system of government in which 50 separate states and one central government share power. These matters were hotly contested and debated by the first constitutional convention over 200 years ago, and remain important today. Any changes about what Minnesota peace officers can do in North Dakota have to come from North Dakota lawmakers and North Dakota courts.
Vivier , 453 N.W.2d at 716. Therefore, whether a foreign peace officer has jurisdiction to arrest an individual in a neighboring state depends on the law of the state where the arrest was made. Id. at 715. The Department offered no authority that would support that the State can unilaterally extend its criminal jurisdiction inside the boundaries of the MHA through N.D.C.C. § 44-08-20.
[¶ 18] On the issue of agreements between tribes and other agencies, this Court has noted:
The record discloses no evidence of cross-deputization or other cooperative agreements. See Piotrowski v. Comm'r of Public Safety , 453 N.W.2d 689 (Minn. 1990). The Director has not briefed the issue of the North Dakota Highway Patrol's authority to enter an Indian Reservation and exercise police authority and we are wholly unpersuaded that Officer Rumple was so empowered. State highways running through an Indian Reservation remain part of the Reservation and within the territorial jurisdiction of the tribal police. Ortez-Barraza [Ortiz-Barraza] v. United States , 512 F.2d 1176 (9th Cir. 1975). Even if Officer Rumple had the authority of an ordinary citizen to arrest on the Reservation, assuming that the tribal ordinances provided for citizens' arrest, he would not be authorized under section 39-20-01, NDCC, to request or direct a chemical test. We have been apprised of no tribal law or case which authorizes an ordinary citizen to request a DUI arrestee to undergo testing. But see Bounds v. Commissioner of Pub. Safety , 361 N.W.2d 145 (Minn. App. 1985).
Davis v. Dir., N.D. Dep't of Transp. , 467 N.W.2d 420, 423 (N.D. 1991). Here, like in Davis , there is no evidence of an agreement between Mountrail County and the MHA providing the deputy authority to act on the MHA's tribal land.
[¶ 19] In the absence of any authority for the deputy to act in his capacity as a law enforcement officer, we can consider whether or not the deputy could make an arrest in his capacity as an ordinary citizen. For example, many states allow officers to complete a "citizen's arrest" under certain circumstances or provide foreign law enforcement officers the authority to arrest when in "fresh pursuit." See generally Kansas v. Hamman , 273 Kan. 89, 41 P.3d 809, 811-12 (2002); Piotrowski , 453 N.W.2d at 691 ; Massachusetts v. Twombly , 435 Mass. 440, 758 N.E.2d 1051, 1053 (2001). The Department presented no authority indicating that the MHA's laws provided the deputy with the authority to initiate a citizen's arrest.
*683 [¶ 20] The MHA, through federal law, has criminal jurisdiction on tribal land over non-member Indians. Therefore, without authority from the tribe conveyed through tribal laws or an agreement between Mountrail County and the tribe, the deputy lacked authority to arrest Olson.
IV
[¶ 21] The Department also relies on a Minnesota Supreme Court decision to argue that an officer has authority to validly arrest a non-member Indian on tribal land. Minnesota v. Davis , 773 N.W.2d 66, 74 (Minn. 2009), cert. denied , 559 U.S. 1069, 130 S.Ct. 2111, 176 L.Ed.2d 725 (2010). In Minnesota v. Davis , the defendant was stopped by a tribal police officer and issued citations for speeding and driving without proof of insurance on behalf of the local State of Minnesota governing unit. Id. at 67. The tribal police officers had the authority to act as a law enforcement officer employed by "local units of government" pursuant to Minnesota law. Id. ; Minn. Stat. § 626.90, subd. 3 (2017). The officer arrested the defendant on a warrant unrelated to the immediate traffic violations. Minnesota v. Davis , at 67.
[¶ 22] The decision in Minnesota v. Davis is distinguishable because it involved the State's assertion of civil/regulatory jurisdiction and not criminal jurisdiction. 773 N.W.2d at 69-70. The Minnesota Supreme Court began its analysis by concluding that the offenses at issue, speeding and failing to provide proof of insurance, are civil/regulatory offenses. Id . The Court then engaged in a detailed analysis of whether the State of Minnesota has jurisdiction over civil/regulatory matters on tribal land, ultimately concluding the state has jurisdiction over civil/regulatory matters relating to non-member Indians. Id . at 70-74.
[¶ 23] This case involves an application of N.D.C.C. § 39-20-01(2) as the vehicle for revocation of Olson's driving privileges. Section 39-20-01(2), N.D.C.C., specifically requires a valid arrest to have occurred in order to revoke Olson's driving privileges. Regardless of whether the State has jurisdiction to conduct the administrative hearing itself, a valid arrest is an essential prerequisite to revocation of Olson's license. The State is required to have criminal jurisdiction to effectuate a valid arrest, and in this case, it lacked criminal jurisdiction over a non-member Indian on the MHA's tribal land. Therefore, the Department's order was not in accordance with the law because Olson was not subject to a valid arrest.
V
[¶ 24] The deputy lacked authority to arrest Olson, a non-member Indian, on MHA tribal land. We reverse the district court's order affirming the Department's revocation of Olson's driving privileges and reinstate Olson's driving privileges.
[¶ 25] Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Gerald W. VandeWalle, C.J.