(No. 65230.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALLEN FENTON, Appellee.

*Opinion filed December 6, 1988.*

STAMOS, J., took no part.

Neil F. Hartigan, Attorney General, of Springfield, and Samuel Naylor VI, State's Attorney, of Carthage (Shawn W. Denney, Solicitor General, Terence Madsen and Nathan P. Maddox, Assistant Attorneys General, Kenneth R. Boyle, John X. Breslin and Howard R. Wertz, of the State's Attorneys Appellate Prosecutor, of Ottawa, and Douglas K. Smith, of Missouri, of counsel),

for the People.

No appearance for appellee.

JUSTICE CUNNINGHAM delivered the opinion of the court:

Defendant, Allen Fenton, was charged with the offense of speeding in violation of section 11—608 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—608). Prior to trial in the circuit court of Hancock County, defendant filed a motion to suppress, which was granted. The People appealed, and the appellate court affirmed (154 Ill. App. 3d 152). We granted the People's petition for leave to appeal (107 Ill. 2d R. 315). No questions are raised on the pleadings. The sole issue is whether the circuit court erred in granting defendant's motion to suppress.

On December 26, 1985, at approximately 11:30 p.m., a Hamilton, Illinois, police officer in uniform in an unmarked car equipped with red lights in the grill, headlight flashers, and pop-up lights inside the passenger area of the patrol car, saw a driver speeding toward the Keokuk—Hamilton bridge, which crosses into Iowa. The officer, being trained and certified in the use of radar, determined from his radar the speed of the car to be 61 miles per hour in a 35 miles per hour zone.

The Illinois officer activated his emergency lights and pursued the car. The driver stopped the car in Iowa, approximately two blocks from the Keokuk—Hamilton bridge. The driver then got out of his car. The officer and the driver of the car met between the cars, and the officer recognized the driver as Allen Fenton, the defendant. The officer told defendant that he was going 61 miles per hour in a 35 miles per hour zone, and to come by city hall in Hamilton, Illinois, to pick up his cita-

tion. The officer and defendant talked only a few seconds. The officer identified the driver of the car and left.

It is undisputed that only at this point was the Illinois officer able to identify the driver of the car as defendant.

Defendant filed a motion to suppress the police officer's identification on the following grounds:

"When the defendant was stopped and informed that he would be issued a citation, he was in the State of Iowa at approximately 5th and Main Street in Keokuk, Iowa, and that such stop was illegal and beyond the jurisdiction of the police officers."

Defendant has not participated in the appeal of this matter.

The circuit court issued its letter of opinion on June 16, 1986, granting defendant's motion to suppress. The circuit court concluded that no arrest had taken place under Iowa law, but that the identification of defendant by the Illinois officer occurred during an illegal stop in Iowa and should be suppressed. The appellate court affirmed the circuit court. The appellate court agreed that no arrest had taken place, and characterized the stop of defendant as an investigatory stop.

After pointing out that an out-of-jurisdiction officer has the status of a private citizen (*State v. O'Kelly* (Iowa 1973), 211 N.W.2d 589), the appellate court concluded that a private person is proscribed from making an investigatory stop. Since the Illinois officer had the status of a private citizen in Iowa, the appellate court concluded that the Illinois officer's "investigatory stop" of defendant was illegal, and the identification of defendant should be suppressed. 154 Ill. App. 3d at 154.

For the reasons developed below, we reverse.

This case comes to this court on a stipulated record. Both parties agree that no factual dispute exists. From this stipulated set of facts, we can only conclude that,

not only did an arrest not take place, but an investigatory stop did not take place.

We agree with the circuit court and appellate court that, upon leaving Illinois, the Illinois officer had only the status of a private citizen. Based on the stipulated facts, this court is unable to know why defendant stopped several blocks from the bridge once he was inside the Iowa border. There is no need to draw any inferences, or to speculate, on the reason why defendant stopped. Once defendant stopped, he exited his car and met the officer between his car and the unmarked police car. The officer did not ask for defendant's name or his driver's license; from the stipulated facts, we conclude that the officer recognized defendant. The officer informed defendant he was going 61 miles per hour in a 35 miles per hour zone, and told defendant to come to the city hall in Hamilton to pick up his citation.

Should the exclusionary rule be applied to the identification of an allegedly speeding driver obtained by a police officer in his capacity as a private citizen, in a momentary encounter occurring when both the private citizen and the driver exit their automobiles, and the private citizen recognizes the driver? We think not.

We note that the momentary encounter between the officer and defendant in this case is far less intrusive than the actions of law enforcement officers in *State v. Gully* (Iowa 1987), 346 N.W.2d 514. In *Gully*, a defendant voluntarily accompanied a law enforcement official after the official informed the defendant that he was wanted for questioning at the police station. The supreme court of Iowa noted that "[t]he fourth amendment's protection against unreasonable intrusions on a person's liberty arises when an officer seizes a person" and that "it is important to remember that 'not all personal intercourse between policemen and citizens involves "seizures" of persons' that implicate the fourth

amendment." *Gully*, 376 N.W.2d at 516. The *Gully* court also noted:

> "[L]aw enforcement officers do not violate the fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." (376 N.W.2d at 516.)

In the instant case, the officer should not have been required to shrug his shoulders and look the other way when defendant exited his car and walked toward the officer. The only information needed by the officer, the identity of defendant, was obtained simply by looking at him. Under these circumstances, there was no seizure within the meaning of the fourth amendment. "If there is *** no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed." *Florida v. Royer* (1983), 460 U.S. 491, 498, 75 L. Ed. 2d 229, 236, 103 S. Ct. 1319, 1324.

We emphasize the narrowness of the question presented. No arrest took place, and we do not consider whether an Illinois officer may, as a private citizen, arrest a driver for speeding. No investigatory stop took place, and we do not consider whether an Illinois officer may, as a private citizen, conduct a noncustodial investigation of a driver for speeding. No request for identification of the driver was made, and we do not consider whether an Illinois officer may, as a private citizen, request identification of a driver who the private citizen thinks was speeding. This court simply refuses to suppress the identification of an allegedly speeding driver by a police officer, in his capacity as a private citizen, which was obtained in a momentary encounter between the private citizen and the driver, once the driver gets out of his car.

For the reasons stated, we reverse the appellate court's judgment affirming the circuit court's dismissal of the complaint. We remand this cause to the circuit court of Hancock County, with instructions that the Illinois officer, in his capacity as a private citizen, be allowed to make an identification of defendant based on the momentary encounter between the officer and defendant.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*

JUSTICE STAMOS took no part in the consideration or decision of this case.