William Mark **PIOTROWSKI**,
Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY**, petitioner,
Appellant.

**STATE of Minnesota**,
petitioner, Appellant,

v.

William Mark **PIOTROWSKI**,
Respondent.

Nos. C6–88–1039, C0–88–1148.

Supreme Court of Minnesota.

April 6, 1990.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Bode, Asst. Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., State of Minnesota, Public Safety Div., St. Paul, and Teresa L. Joppa, Asst. City Atty., Moorhead, for appellant.

William Kirschner, Fargo, for respondent.

Dean S. Grau, Peter C. Mayrand, Gail Weber, Minnesota Society for Criminal Justice, Minneapolis, State of North Dakota, Nicholas J. Spaeth, Atty. Gen., Robert E. Lane, Asst. Atty. Gen., Bismarck, N.D., Mn. Society for Criminal Justice, Nichols, Kaster & Anderson, Minneapolis, amicus curiae.

KEITH, Justice.

These consolidated appeals by the State of Minnesota and the Commissioner of Public Safety present issues concerning the authority of a Minnesota police officer to pursue a driver across the border into North Dakota after observing the driver commit a traffic offense in Minnesota in the officer's presence. In both the DWI prosecution under Minn.Stat. § 169.121 (1986) and the implied consent proceeding under section 169.123, the driver, William Mark Piotrowski, sought to suppress all evidence that was the fruit of the pursuit and stop on the ground that the officer did not have authority to act as he did. In both proceedings the trial court concluded that the stop and subsequent arrest were valid. The court of appeals reversed in both cases. *State v. Piotrowski*, 435 N.W.2d 573 (Minn.App.1989); *Piotrowski v. Commissioner of Public Safety*, 433 N.W.2d 124 (Minn.App.1989). We granted the petitions for review filed by the state and the Commissioner of Public Safety.

The facts are stipulated. At 2:35 a.m. on January 1, 1988, Moorhead Police Officer Wicklund saw Piotrowski drive through a flashing red light. Wicklund followed him onto westbound I–94 heading into North Dakota, activating his red light approximately 4 seconds before Piotrowski crossed into North Dakota. Piotrowski proceeded into North Dakota approximately 100 yards west of the I–94 bridge before stopping. After requiring Piotrowski to perform field sobriety tests and a preliminary breath test, Wicklund concluded that he was under the influence of alcohol. Wicklund arrested him for violating the Minnesota DWI statute, section 169.121, and radioed a Fargo police officer to come to the scene. Wicklund read Piotrowski the standard Minnesota implied consent advisory and told him that he had a choice of coming back to Minnesota and being charged with DWI here or of remaining in North Dakota and possibly being charged both with DWI there and with DWI in Minnesota. Piotrowski decided to return to Minnesota. A Fargo police officer arrived on the scene and spoke briefly with Wicklund. Wicklund then took Piotrowski to the Clay County Law Enforcement Center in Moorhead, where Piotrowski submitted to a breath test, which indicated that he had a blood alcohol concentration of .10 or more.

One issue presented by the appeals is whether a Minnesota police officer is free to continue the fresh pursuit of a fleeing suspect once the suspect has crossed the border into another state. The answer is clear with respect to *intrastate* fresh pursuit of a driver outside the officer's jurisdiction. We have upheld stops and arrests on two different theories in such cases: one, that the arrests were valid misdemeanor fresh pursuit arrests by police outside their jurisdiction under Minn.Stat. § 629.40 (1988) [*State Dept. of Public Safety v. Nystrom*, 299 Minn. 224, 225, 217 N.W.2d 201, 202 (1974), and *Smith v. Hubbard*, 253 Minn. 215, 219, 91 N.W.2d 756, 761 (1958) ]; two, that the arrests were valid as citizen's arrests by the police under Minn.Stat. § 629.37 (1988) [*State v. Schinzing*, 342 N.W.2d 105, 108–09 (Minn.1983), *State v. Filipi*, 297 N.W.2d 275, 277–78 (Minn.1980), and *Smith*, 253 Minn. at 224, 91 N.W.2d at 764]. *See also State Dept. of Public Safety v. Juncewski*, 308 N.W.2d 316 (Minn. 1981), (holding that when making citizen's arrests outside their jurisdiction police may administer preliminary screening tests).

We deal here with *interstate* fresh pursuit of a driver by a Minnesota officer. Minnesota, North Dakota and a number of other states have expressly addressed the issue of *felony* fresh pursuit arrests in the

interstate context by adopting the Uniform Law on [Interstate] Fresh Pursuit, codified in Minnesota at Minn.Stat. § 626.65 (1988). That statute, as presently worded, does not address the issue of whether the àrresting officer may do as the officer did here, specifically, obtain the suspect's voluntary agreement to return immediately to the state of the arresting officer, where the chase began. It is clear, however, that if the officer does not give the arrestee the option of agreeing to return immediately to the state where the chase began, under sections 626.65 and 626.66 the proper procedure is for the officer to contact a police officer in the other state and take the arrestee before a magistrate in that state without unnecessary delay.

The fact that the legislatures of Minnesota and North Dakota have not adopted procedures for interstate fresh pursuit of misdemeanants[1] such as Mr. Piotrowski does not mean, in our opinion, that Minnesota and North Dakota police officers are powerless to pursue misdemeanants across the state border. It is undisputed that the police departments of Moorhead, Minnesota and Fargo, North Dakota have a longstanding agreement concerning the handling of misdemeanor fresh pursuit arrests and that those procedures were followed in this case. Specifically, the arresting officer freshly pursues the driver across the border, makes the stop, contacts the police in the jurisdiction where the stop is made, and then does one of three things: makes a citizen's arrest (which involves taking the suspect before a magistrate in that jurisdiction), turns the suspect over to a police officer in that jurisdiction (who makes the arrest), or obtains the suspect's consent to return voluntarily to the state where the fresh pursuit began.

That the State of North Dakota has no difficulty with this procedure is made clear by the North Dakota Supreme Court's decision in *City of Wahpeton v. Johnson*, 303 N.W.2d 565 (N.D.1981). In *Johnson*,

North Dakota police officers pursued a driver into Minnesota after they observed him commit a minor traffic offense in North Dakota. The driver stopped just after crossing the border into Minnesota. The officers then made observations giving them reason to believe that the driver was under the influence of alcohol. They asked the driver if he would accompany them back to North Dakota. He agreed to do so and was put in the back of the squad car and taken to North Dakota, where he was formally arrested and given a breath test, the result of which was used to convict him of DWI in North Dakota. The North Dakota Supreme Court reasoned that the North Dakota officers were acting as private citizens while in Minnesota, that they could not have forced the driver to accompany them back to North Dakota, but that they did have the option of either persuading the driver to accompany them back to North Dakota or making a citizen's arrest and turning him over to Minnesota police.

Our case differs only in that here the officer told Mr. Piotrowski he was under arrest before asking him if he would accompany him back to Minnesota. We do not believe that this distinction should make for a different result. As in that case, the officer in this case simply gave the driver a realistic choice: you may voluntarily accompany me back to Minnesota and face charges there or I will turn you over to North Dakota police. We do not see anything wrong with giving a suspect such a choice. Indeed, the Uniform Criminal Extradition Act, adopted in Minnesota and North Dakota, provides expressly that "nothing [in the statute] shall be deemed to limit the rights of the accused person to return voluntarily and without formality to the demanding state" and further provides that the formal waiver of extradition procedures provided by the Act "shall [not] * * * be deemed to be [the] exclusive procedure" for accomplishing the voluntary return of the suspect. *See* Minn.Stat.

---

1. We note, however, that a bill has been introduced in the current session of the legislature which, among other things, broadens Minn.Stat. § 626.65 (1988) by expressly authorizing interstate fresh pursuit not just of fleeing felons but also of fleeing traffic violators and misdemeanants. S.F. 1916, and H.F. 2056 First Engrossment, 76th Legislature (in conference committee as of 3–30–90).

§ 629.24 (1988). By analogy, we believe the choice offered Mr. Piotrowski was a fair choice and that it was in his interest to be given that choice.

The argument is made that the officer could not stop Piotrowski in North Dakota for a Minnesota offense, only for a North Dakota offense, and that he could not stop him for a North Dakota offense because he did not see anything suggesting that Piotrowski committed a North Dakota offense before he stopped him. In *Johnson,* the North Dakota Supreme Court said that a North Dakota police officer's fresh pursuit misdemeanor stop in Minnesota was "justified and reasonable" even though it was based exclusively on an illegal left turn observed in North Dakota. *Id.* at 567. Similarly, Minnesota courts have upheld fresh pursuit misdemeanor stops by Wisconsin police officers in Minnesota based on conduct observed in Wisconsin. *Swapinski v. Commissioner of Public Safety,* 368 N.W.2d 322, 323–24 (Minn.App.1985), *pet. for rev. denied* (Minn.1985); *State v. Sellers,* 350 N.W.2d 460, 462–63 (Minn.App. 1984). Any other conclusion would mean in effect that in most cases a driver in Minnesota who commits misdemeanor driving offenses near the border is for all practical purposes free to evade arrest by the simple act of driving across the border when an officer attempts to stop him. The officer could pursue, but not stop, the driver unless he observed a violation within the other state. The officer could contact a police officer in the other state and ask that officer to take up the chase, a procedure that seems to us to be impractical.

In view of our decision, we need not address the hypothetical question of whether or not the exclusionary rule would apply in this case if we had held that the pursuit, stop and arrest of Mr. Piotrowski were in violation of either Minnesota law or North Dakota law. *See Schinzing,* 342 N.W.2d at 108–09 (refusing to decide whether exclusionary rule should apply to a violation of Minnesota law by a Minnesota officer acting within the State of Minnesota but outside his jurisdiction), and *State v. Lucas,* 372 N.W.2d 731, 736–37 (Minn.1985) (rejecting conflicts-of-law approach and adopting exclusionary rule approach to issue of whether evidence seized in another state should be excluded in a Minnesota prosecution).

Suffice it to say, we conclude that Officer Wicklund acted lawfully in pursuing and stopping Mr. Piotrowski and in giving him the option of voluntarily accompanying him back to Minnesota, and Mr. Piotrowski received a fair trial in Minnesota in each of the proceedings for an act which occurred in Minnesota. Accordingly, we reverse the decisions of the court of appeals in *State v. Piotrowski,* 435 N.W.2d 573 (Minn.App. 1989), and in *Piotrowski v. Commissioner of Public Safety,* 433 N.W.2d 124 (Minn. App.1989), and reinstate the decisions of the trial court.

Reversed.

WAHL, Justice, dissenting.

I respectfully dissent. While the enforcement of traffic laws in the border towns of Minnesota for the protection of the traveling public is of deep concern to this court and to the people of this state, the validity of the stop and arrest and thus of the evidence seized from Piotrowski depends, not on a longstanding agreement between the Fargo and Moorhead Police Departments, useful as that may be, but on the law as it exists as applied to the facts of this case.

The court of appeals, in *Piotrowski v. Commissioner of Public Safety,* 433 N.W.2d 124, 128–29 (Minn.App.1989), concluded that since the stop in North Dakota was neither the result of fresh pursuit of a fleeing felon by a police officer nor the product of observable criminal activity in North Dakota, Wicklund had neither a peace officer's authority nor the right of a private person to make a stop and arrest. The fruits of that stop and arrest, i.e., the evidence of respondent's blood alcohol content, were held to be inadmissible in the implied consent proceeding. *Id.* at 129–30. The court of appeals in *State v. Piotrowski,* 435 N.W.2d 573, 575 (Minn.App.1989), reached the same conclusion, holding that because the Minnesota police officer had no

authority to stop a motorist outside the state for a misdemeanor traffic violation observed by the officer while on duty in his own jurisdiction, the stop of respondent in North Dakota and his subsequent arrest for a violation of Minnesota DWI laws was illegal with the resulting evidence to be suppressed. I find it impossible to reach a contrary result desirable as that result might be.

The procedure worked out by the police departments of Moorhead, Minnesota, and Fargo, North Dakota, through a long history of cooperation and mutual agreement, to deal with traffic offenders traveling from one state to the other, appears to be that the officer witnessing a misdemeanor traffic violation freshly pursues the driver across the border, makes the stop, contacts the police in the jurisdiction where the stop is made and then gives the person stopped the choice of voluntarily returning to the jurisdiction where the pursuit began or of being turned over to the officer in whose jurisdiction the stop was made for prosecution of the offense committed in that jurisdiction. Such an approach is simple, pragmatic and perhaps not unfair to the alleged offender on the face of it, but whether it is legally valid in a given case is another matter. We should not avoid the difficult questions raised by respondent regarding the legality of the procedure as applied to his case. Does a Minnesota police officer have the authority as a peace officer to make an investigatory stop in North Dakota based on a petty misdemeanor traffic violation observed in Minnesota? May the Minnesota police officer arrest in North Dakota for a misdemeanor violation of Minnesota law?

We must start with the basic law of the land that investigatory stops of motor vehicles and arrests of citizens by government officers are seizures subject to the Fourth Amendment of the United States Constitution and must be reasonable. *United States v. Brignoni–Ponce,* 422 U.S. 873, 877–78, 95 S.Ct. 2574, 2578–79, 45 L.Ed.2d 607 (1975). Had the facts giving rise to this controversy occurred solely in

Minnesota there is no question that the stop and arrest would have been constitutional. Wicklund observed a traffic violation[1] which in itself gave him a valid, objective basis to stop respondent's car and ask him for identification. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. L'Italien,* 355 N.W.2d 709, 710 (Minn.1984). Once respondent's car was properly stopped, Wicklund noticed indicia of intoxication. The signs of intoxication gave the officer "reason to believe" that respondent was driving under the influence, and pursuant to Minn.Stat. § 169.121, subd. 6, Wicklund was fully justified in asking respondent to take the PBT. After respondent failed the preliminary screening test, Wicklund then possessed all the facts necessary to sustain his probable cause belief that respondent was driving under the influence and could lawfully arrest respondent for violation of § 169.121.

The question under the facts of this case, however, is whether the stop which would have been lawful had it happened in Minnesota becomes invalid solely because it was made 100 yards over the line in North Dakota. Officer Wicklund observed respondent drive through a flashing red light, in violation of Minn.Stat. § 169.06, subd. 7 (1988), at an intersection in Moorhead about a block from the I–94 bridge, pursued respondent's car and initiated the stop in Minnesota by activating the red lights of his squad car about four seconds before respondent reached the bridge over the Red River which forms the state line. Respondent stopped about 100 yards west of the bridge in North Dakota. The state argues that the investigatory stop of a motor vehicle based on an observed traffic violation in Minnesota and initiated in Minnesota is not rendered unlawful by the driver's stopping across the state line and that Wicklund made a valid citizen's stop and arrest. Respondent maintains that Wicklund had no authority as a police officer or as a private citizen to stop respondent's automobile once he crossed the state line and that without such authority his

---

1. Minn.Stat. § 169.89, subd. 1, provides that a     semaphore violation is a petty misdemeanor.

seizure of respondent in North Dakota was unreasonable under the Fourth Amendment.

Minnesota is a part of the federal system in which there are geographic limitations on the exercise of a state's power, a system in which a state can only exercise jurisdiction over people and property within its boundaries. *Pennoyer v. Neff,* 95 U.S. 714, 722, 24 L.Ed. 565 (1878). As to the authority of a peace officer acting without a warrant outside the territorial limits of the jurisdiction under which he holds office, the general rule is that the officer is without official powers to apprehend offenders. *State v. Littlewind,* 417 N.W.2d 361, 363 (N.D.1987); *see generally Validity, in State Criminal Trial, of Arrest Without Warrant by Identified Peace Officer Outside of Jurisdiction, When Not in Fresh Pursuit,* 34 ALR4th 328 (1984). The state contends, however, that the mere fact that respondent's vehicle came to a halt on the North Dakota side of the line did not invalidate the stop initiated in Minnesota and that, in any event, the stop was valid because Wicklund, even though an officer in another jurisdiction, had the power as a private person or private "citizen" under North Dakota law to arrest respondent in North Dakota for any "public offense" committed or attempted in his presence. N.D.Cent.Code § 29–06–20 (1974). These arguments, while appealing, must be analyzed under the law as it exists.

The law recognizes that the authority of police officers to give chase to suspected criminals does not in every case vanish the moment a police officer reaches the border of his home state. The Uniform Act of Fresh Pursuit (Act), as adopted by Minnesota and North Dakota, governs the jurisdiction of foreign police officers who, while in pursuit of a felon, cross state lines. Under the Act, police officers acting outside of their home state jurisdiction do not lose their peace officer status.

Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest the person on the ground that the person is believed to have committed a *felony* in such other state, *shall have the same authority to arrest and hold such person in custody as has any member of any duly organized state, county, or municipal peace unit of this state* to arrest and hold in custody a person on the ground that the person is believed to have committed a felony in this state provided that the rights extended by this section shall be extended only to those states granting these same rights to peace officers of this state who may be in fresh pursuit of suspected criminals in such reciprocating states.

Minn.Stat. § 626.65 (1988); *see also* N.D. Cent.Code § 29–06–05 (1974) (emphasis added).

To the extent that Wicklund crossed the Minnesota border in fresh pursuit of a misdemeanant as opposed to a suspected felon, the Uniform Fresh Pursuit Act is inapplicable to the stop of respondent in North Dakota. The court of appeals correctly concluded that the unambiguous use of the word "felony" in the Act precludes an interpretation and the substitution of the word "misdemeanor." *State v. Piotrowski,* 435 N.W.2d at 574; *Piotrowski v. Commissioner of Public Safety,* 433 N.W.2d at 127. Such a conclusion, in my view, prevents us from fashioning the obviously needed interstate misdemeanor fresh pursuit rule which would solve the problem in these and so many other cases.[2] The officer in this case had no authority as a police officer to stop respondent in North Dakota for a semaphore violation, a public offense, committed in his presence in Minnesota, but can the stop be validated on any other legal ground? If not, it is undisputed as a matter of law that an impermissible investigative stop will invalidate a subsequent arrest. Generally, it has been held under authorizing statutes or common

---

**2.** *See, e.g., Incorporated County of Los Alamos v. Johnson,* 108 N.M. 633, 635, 776 P.2d 1252, 1253 (1989); *State v. McCarthy,* 123 N.J.Super 513, 520, 303 A.2d 626, 630 (1973) (intrastate fresh pursuit of misdemeanors authorized by statute).

law jurisprudence of the various jurisdictions, that peace officers acting without a warrant outside their own jurisdiction may make valid arrests as citizens for felony and non-felony offenses.[3] Thus, while the rule that a police officer acting outside his jurisdiction has the arrest powers of a private citizen has been used to allow an out-of-state police officer to make a citizen's arrest in another state, *State v. Shienle*, 218 Kan. 637, 642, 545 P.2d 1129, 1134 (1976); *Commonwealth v. Gullick*, 386 Mass. 278, 282, 435 N.E.2d 348, 351 (1982); *State v. Sellers*, 350 N.W.2d 460, 462 (Minn.App.1984), the validity of such an out-of-state arrest is determined by reference to the laws of the place where the arrest occurred. *Michigan v. DeFillippo*, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979).

The parties properly rely on the North Dakota citizen's arrest statute to determine the legality of Officer Wicklund's stop and arrest of respondent. North Dakota's citizen's arrest statute gives a "private person" authority to "arrest another * * * [f]or a public offense committed or attempted in his presence," N.D.Cent.Code § 29–06–20, but gives that citizen no authority to make an investigative stop. I can find no authority in North Dakota or in any state which grants to citizens the right to make an investigative stop.

The state argues that *City of Wahpeton v. Johnson*, 303 N.W.2d 565, 567 (N.D. 1981), stands for the proposition that a police officer who observes a traffic violation in one state may make a citizen's stop in another state. In *Wahpeton*, the stop of a driver in Minnesota by North Dakota officers based on an illegal left turn observed in North Dakota was not an issue in the case. The issue was the legality of the arrest which the North Dakota Supreme Court upheld because they found it to have been made in North Dakota within the officers' jurisdiction. The observation that the stop in Minnesota was "justified and reasonable" was dicta without analysis or support. *Id.* at 567. In *Commonwealth v. Gullick*, 386 Mass. 278, 435 N.E.2d 348 (1982), the Massachusetts Supreme Court assumed that New Hampshire law does not authorize a private citizen to make an investigative stop, but held that the Massachusetts police officer made a valid citizens arrest in New Hampshire because at the time of the stop, the police officer had probable cause to arrest for a felony. *Id.* at 283–84 and n. 4, 435 N.E.2d at 351–352 and n. 4. *See also, People v. Fenton*, 154 Ill.App.3d 152, 154, 107 Ill.Dec. 88, 89–90, 506 N.E.2d 979, 980–81 (1987), *rev'd*, 125 Ill.2d 343, 347, 126 Ill.Dec. 543, 545, 532 N.E.2d 228, 230 (1988) (lower court concluded that Illinois police officer's pursuit of traffic offender three blocks into Iowa was impermissible investigatory stop, reversed on the ground that the police officer's interaction with the motorist in Iowa did not rise to the level of a stop).

To conclude that a private citizen in North Dakota has no authority under North Dakota law to make a *Terry*-type investigative stop where the person stopped has not committed or attempted to commit a public offense in the citizen's presence does not end the matter. It leads to the next conclusion: if a public offense *is* committed or attempted in the citizen's presence, the citizen must necessarily stop the offender in order to effectuate the arrest authorized by section 29–06–20 and

---

**3.** In Minnesota and North Dakota a police officer who acts outside of his territorial jurisdiction within the state has the arrest powers of a private citizen. *See, e.g., Windschitl v. Commissioner of Public Safety*, 355 N.W.2d 146, 149 (Minn.1984); *Department of Pub. Safety v. Juncewski*, 308 N.W.2d 316, 321 (Minn.1981); *State v. Filipi*, 297 N.W.2d 275, 278 (Minn.1980) and *State v. Littlewind*, 417 N.W.2d 361, 363 (N.D. 1987). In Minnesota, the citizen's arrest authority of a police officer has been used to allow a police officer to make an investigatory stop and arrest outside of his jurisdiction in the same state for public offenses committed in his presence. *See, e.g., State v. Schinzing*, 342 N.W.2d 105, 108–09 (Minn.1983). The citizen's arrest authority has also been used to allow a police officer to pursue, stop and arrest an offender who commits a "public offense" or felony within the officer's jurisdiction, then leaves the officer's jurisdiction. *Juncewski*, 308 N.W.2d at 321; Minn.Stat. § 629.37 (1988). *See also* Minn. Stat. § 629.40, subds. 2–3 (1988) (licensed police officer in this state may pursue and arrest anywhere in this state).

such a stop would be valid. *Cf. State v. Ferrell*, 218 Neb. 463, 466, 356 N.W.2d 868, 870 (1984) (felony interstate pursuit necessarily requires a stop). Did respondent commit or attempt to commit a public offense in Wicklund's presence for which Wicklund, in his capacity as a private citizen, was authorized by North Dakota law to stop and arrest him? Wicklund saw respondent commit no public offense in North Dakota. He did not have probable cause to believe respondent was driving under the influence in either North Dakota or Minnesota until after the stop. Wicklund stopped respondent for the Minnesota semaphore violation. Thus, the question becomes whether a Minnesota police officer may make a valid stop and citizen's arrest in North Dakota under North Dakota law for a misdemeanor public offense committed in his presence in Minnesota or must the in-presence public offense be committed in North Dakota.

The state points out that there is nothing on the face of the North Dakota citizen's arrest statute which limits the power of citizens in North Dakota to arrest for in-presence public offenses committed in North Dakota and argues that the statute authorizes citizens to arrest for public offenses committed in other states. Such an interpretation is, in my view, untenable. The North Dakota legislature was well aware, in drafting its substantive and procedural criminal statutes, that the state's sovereignty extended only to its physical boundaries. The North Dakota legislature enacted a specific statute to give its peace officers authority to arrest a person without an arrest warrant upon probable cause to believe that the person is the subject of another state's arrest warrant for commission of a *felony* in that other state. N.D. Cent.Code § 29–30.3–04(2–101) (1974). The North Dakota legislature enacted a specific statute to give peace officers from another state in fresh pursuit of a person believed to have committed a felony in that other state the same authority to arrest and hold such person in custody as North Dakota peace officers have "to arrest and hold in custody a person on the ground that he is believed to have committed a felony *in this*

state." N.D.Cent.Code § 29–06–05 (emphasis added). The Supreme Court of North Dakota has recognized that a private person's authority to make a warrantless arrest for a misdemeanor in that state is more limited than that of a police officer because the police officer may arrest with probable cause while a private person may arrest only where the misdemeanor is actually committed or attempted in his presence. *State v. Littlewind*, 417 N.W.2d at 363, n. 1. In light of such evidence, I cannot conclude that the North Dakota Legislature intended, in its citizen's arrest statute, to give private persons the authority to arrest for misdemeanor public offenses committed in other states absent specific authorizing language. The cases cited by the state neither compel nor support a contrary conclusion.

Where officers without a warrant have pursued a person into a neighboring state for an offense and effected a valid arrest there, the offense has either been a felony or the officer has witnessed an in-presence offense in the neighboring state. For example, in *State v. Baton*, 488 A.2d 696, 700 (R.I.1985), a Rhode Island police officer was held to have made a valid citizen's arrest in Connecticut based upon a probable cause belief that the defendant had committed a felony in Rhode Island. In *State v. O'Kelly*, 211 N.W.2d 589, 595 (Iowa 1973), *cert. denied*, 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), the warrantless arrest by Nebraska police officers in Iowa was upheld because it was made in conjunction with an Iowa deputy sheriff and because it was a valid citizen's arrest for an in-presence public offense committed in Iowa.

The state argues that in *State v. Sellers*, 350 N.W.2d 460 (Minn.App.1984), a Wisconsin police officer was held to have made a valid citizen's arrest in Minnesota for a petty misdemeanor traffic offense committed in Wisconsin. The *Sellers* court, in fact, held that a Wisconsin officer who first observed a traffic offense in Wisconsin, then followed the offender into Minnesota, observing additional traffic offenses in Minnesota, made a valid stop and citizen's

arrest and upon observing signs of intoxication, could administer a preliminary screening test and field sobriety test. Although Sellers would have been stopped in Wisconsin for the petty misdemeanor of squealing tires, the offense which initiated the stop, he was stopped in Minnesota for speeding of 70 m.p.h., fishtailing, going through a stop sign at 35 m.p.h. and crossing over the center line. Seller was prosecuted for DWI in Minnesota. Similarly, in *Swapinski v. Commissioner of Public Safety*, 368 N.W.2d 322, 323 (Minn.App. 1985), the Wisconsin police officers, pursuing a speeder across the "High Bridge" from Wisconsin to Minnesota, observed excess speed and an improper lane change in Minnesota before effecting a citizen's arrest and turning the offender over to Minnesota authorities for prosecution of DWI. The arrest in *City of Wahpeton v. Johnson*, 303 N.W.2d 565 (N.D.1981), was not a citizen's arrest but was valid because it was made in North Dakota by North Dakota police officers after they had persuaded Johnson to return with them from across the bridge in Minnesota where they had pursued him for an illegal turn.

I would conclude, as did the court of appeals, that under the North Dakota citizen's arrest statute a citizen may arrest another for a public offense committed in his presence only if that public offense is committed or attempted in North Dakota. No public offense was committed in Officer Wicklund's presence in North Dakota. The stop of respondent was not made as a necessary incident to a valid citizen's arrest. The stop of respondent's vehicle in North Dakota, for a petty misdemeanor traffic violation observed in Minnesota, was invalid because it was made by a Minnesota police officer acting without authority as a police officer or as a private person under the laws of North Dakota and was therefore an unreasonable seizure under the Fourth Amendment of the United States Constitution.

The result would have been different had Officer Wicklund observed any public of-

fense committed in North Dakota, speeding, for instance. He could then have made a valid stop for that offense and on stopping the car and observing respondent would have had probable cause to administer the preliminary breath test and thus to arrest for DWI in North Dakota. He would also have had probable cause to believe respondent had been driving under the influence when he observed him in Minnesota. Under the facts in the case before us, at the point where Officer Wicklund arrested respondent for DWI, he summoned a North Dakota police officer because he recognized that he did not have all of his normal authority as a peace officer outside his jurisdiction. He recognized that respondent could not be forced to return to Minnesota. He could and he did, however, give respondent the choice of remaining in the state where he was stopped or of returning voluntarily to Minnesota. It is a stipulated fact that respondent "decided to return to Minnesota" and the trial court so found. As the state points out, had respondent elected to remain in Fargo, Officer Wicklund could have continued with the citizen's arrest procedures by formally turning him over to the Fargo officer who would have processed the matter as a North Dakota DWI violation. As it was, respondent decided to return to Minnesota where Officer Wicklund proceeded with the arrest under his normal procedures as a peace officer. Had the initial stop been made to effectuate a valid citizen's arrest, I see nothing wrong with the procedure which was followed thereafter of giving respondent a choice, a difficult choice, but not one which prejudiced him under the circumstances.

Traffic violators should not be spared prosecution and punishment, but we are a nation of laws, and, as a state, must obey the law even as we seek to enforce it. If there is a gap in the law, if the states need to adopt statutes authorizing interstate fresh pursuit for misdemeanor traffic offenses in the interest of public safety, they must do so.[4] We cannot ask our peace

---

4. We note, as does the majority, S.F. 1916, 76th Minn.Leg. 1990, which will effect arrests by

out-of-state peace officers in Minnesota. However, this proposed amendment does not solve

officers to walk so close to the line between what is lawful and what is unlawful that they inadvertently step over.

As to whether the invalid stop and arrest in this case bar the use of the evidence of respondent's intoxication in the criminal DWI prosecution and the civil implied consent proceeding, I see no reason to reconsider our decision in *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn. 1985). In *Olson* we affirmed the decision of the Hennepin County Municipal Court rescinding the revocation of Olson's license specifically because the evidence of Olson's intoxication was obtained as the result of an investigative stop made in violation of the Fourth Amendment. The Rhode Island Supreme Court has correctly stated the better rule:

> Although technically a civil proceeding, a license revocation based on an illegal search and seizure * * * is in substance and effect a quasi-criminal proceeding since its object is to penalize for the commission of an offense against the law, thereby invoking the application of the exclusionary rule.

*Board of License Comm'rs v. Pastore*, 463 A.2d 161, 165 (R.I.1983).

I would affirm the decisions of the court of appeals in *State v. Piotrowski*, and *Piotrowski v. Commissioner of Public Safety*.

POPOVICH, Chief Justice (dissenting).

I join in the dissent of Justice Wahl.

the problem of a Minnesota peace officer mak-